IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | | |
|---|---|---|
| JOEL MILES WHITE, | ) | Cause No. CV 08-81-BLG-RFC-CSO |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | FINDINGS AND RECOMMENDATION |
| | ) | OF U.S. MAGISTRATE JUDGE |
| SAM LAW, Warden, Crossroads Correctional Center, et al., | ) ) | |
| | ) | |
| Respondents. | ) | |

On June 23, 2008, Petitioner Joel White filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. White is a state prisoner proceeding pro se.

**I. Preliminary Screening**

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading. The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Id. If summary dismissal is not warranted, the judge must order the respondent to file an answer, motion, or other response or "to take other action the judge may order." Id.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 1

## II. Background

The following description of the events underlying White's conviction was given by the Montana Supreme Court in its opinion on direct appeal:

> On June 25, 2005, White went to see his sister, Diane Temple, at her home in Billings. Diane's husband, Gary Temple, and White did not get along and upon Gary's return to the home, Gary told Diane that he did not want White in his house. Diane and White then left together and went to a friend's apartment, taking Diane and Gary's Dodge Durango. Later that evening, Gary went looking for Diane and, finding the Dodge parked on the street, activated the car alarm. Diane heard the alarm and went outside where she and Gary began to argue. White watched the argument from the porch until he and Gary began to argue, at which point White moved into the front yard. A physical confrontation ensued. During the course of the fight, White pulled out a knife and stabbed Gary seven times before finally stabbing Gary in the neck, severing Gary's jugular vein and cutting his carotid artery. Gary stumbled into the street and died. White and Diane fled the scene. Onlookers dialed 9-1-1 and emergency personnel arrived but Gary could not be helped. White and Diane were apprehended by police a few blocks away and White was arrested.
>
> On June 30, 2005, the county attorney filed an information charging White with deliberate homicide, a felony, in violation of § 45-5-102(1)(a), MCA. The case proceeded to jury trial on March 6, 2006. During the trial, eleven eyewitnesses testified about the fight leading to Gary's death. White testified in his own defense, admitting that he had caused Gary's death but asserting that his actions were justified in self-defense. However, eyewitnesses testified that White initiated the fight and continued the attack even after Gary retreated with both hands in the air. Witnesses testified that White told Gary "you're dead[, y]ou're going to fucking die."

State v. White, 184 P.3d 1008, 1009 ¶¶ 4-5 (Mont. 2008); see also Appellant Br., White, No. DA 06-0458 (Mont. July 6, 2007); Respondent Br., White, No. DA 06-0458 (Mont. Sept. 12, 2007); Reply Br., White, No. DA 06-0458 (Mont. Sept. 28, 2007).

The jury convicted White of deliberate homicide. He was sentenced to life in prison plus ten years, concurrent, for use of a weapon. Judgment was entered on June 16, 2006.

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE / PAGE 2

See Pet. (doc. 1) at 2-3, ¶¶ 1-6.

White appealed, arguing that the trial court should have granted a mistrial when a juror commented during deliberations that a friend had called him about the case. See White, 184 P.3d at 1009 ¶ 3. On April 22, 2008, the Montana Supreme Court affirmed the conviction. See id. at 1012 ¶¶ 16-17.

White filed his petition in this Court on June 20, 2008. See Pet. at 8, Pet'r Decl. ¶ C; Houston v. Lack, 487 U.S. 266, 270-71 (1988) (establishing prison mailbox rule).

### III. White's Allegations

First, White alleges that the trial court refused to let the jury know that Temple had threatened White in the past. See Pet. at 4, ¶ 15A ("Claim 1"). Second, White asserts that one witness testified that Temple provoked the attack and was the initial aggressor, but that witness's statement was ignored. See id. at 5, ¶ 15B ("Claim 2"). Third, he contends that his sister, Temple's wife, committed perjury, though he also says that defense counsel's cross-examination caused her to change or retract the statements he challenges. See id. at 5-6, ¶ 15C ("Claim 3"). Fourth, White states that the coroner testified that Temple had no defensive wounds and that none of the witnesses saw the beginning of Temple's attack on him. See id. at 6, ¶ 15D ("Claim 4"). Finally, White states that an Officer Swanson, who was with White continuously for five or six hours following the incident, testified that he did not hear White make statements attributed to him by another officer, Starks. Those statements tended to indicate that White was the aggressor. See id. at 9, ¶ 15E ("Claim 5").

As to each of these claims, White states that he did not raise the claim on direct appeal because the Montana Appellate Defender's Office refused to raise any claim other than the denial of his motion for mistrial.  See, e.g., Pet. at 4, ¶ 15(A)(5).

## IV. Analysis

Although White's claims may be barred on procedural grounds, such as procedural default, it is clear that he is not entitled to relief on the merits of his claims.  Accordingly, it is more efficient to proceed to the merits.  See, e.g., 28 U.S.C. § 2254(b)(2); Lambrix v. Singletary, 520 U.S. 518, 524-25 (1997) (making detailed analysis of constitutional issue despite outstanding question as to procedural bar).

The crucial evidence on which White's conviction rests is the testimony that Temple withdrew from the fight: "[E]yewitnesses testified that White initiated the fight and continued the attack even after Gary retreated with both hands in the air."  White, 184 P.3d at 1009 ¶ 5.  When Temple retreated, White could not reasonably have feared "imminent death or serious bodily harm to himself":

> A person is justified in the use of force . . . against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself . . . against such other's imminent use of unlawful force.  However, he is justified in the use of force likely to cause death or serious bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or serious bodily harm to himself or another or to prevent the commission of a forcible felony.

Mont. Code Ann. § 45-3-102 (2003) (emphases added).

Consequently, even if all of the allegations in White's petition proved true, he still would not be entitled to release or a new trial.  If the trial court had admitted testimony

from someone other than White who actually heard Temple threaten White, see Claim 1, that testimony would not undermine the testimony of the witnesses who saw Temple retreat.  If Temple provoked the attack and was the initial aggressor, see Claim 2, his status – and White's – changed when Temple withdrew from the fight.  White's sister's testimony on cross-examination, see Claim 3, might have convinced the jury that she knew more about the crime than she indicated on direct examination and that she was not trustworthy.  But it could not alter the other witnesses' testimony about Temple's retreat; other than Diane, ten witnesses testified to what they saw as the fight progressed.  See White, 184 P.3d at 1012 ¶ 15.  Again, the beginning of Temple's attack, see Claim 4, is not material to his retreat.  By itself, the absence of defensive wounds might indicate that Temple did not retreat, but coupled with witness testimony that he did, it indicates merely that Temple was unable to defend himself.  Finally, the statements reported by Officer Starks, see Claim 5, have no bearing on the testimony that Temple retreated.

Federal habeas relief is available only to persons who are "in custody in violation of the Constitution, laws, or treaties of the United States."  28 U.S.C. § 2254(a).  Here, the jury did not believe that White acted in self-defense.  The petition does not allege any facts tending to show that the jury's decision rested in some way on an error of federal law.  White's claims should be denied on the merits.

## V. Certificate of Appealability

### A. Governing Law

Pursuant to 28 U.S.C. § 2253(c), "[a] certificate of appealability ['COA'] may issue

. . . only if the applicant has made a substantial showing of the denial of a constitutional right." See Hohn v. United States, 524 U.S. 236 (1998); Lambright v. Stewart, 220 F.3d 1022, 1024 (9th Cir. 2000). The standard of a "substantial showing" can be satisfied on an issue-by-issue basis. Lambright, 220 F.3d at 1024 (citing 28 U.S.C. § 2253(c)(3)).

> [I]n order to make a substantial showing of the denial of a federal right a petitioner . . . "must demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'"

Lozada v. Deeds, 498 U.S. 430, 432 (1991) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). See also Slack v. McDaniel, 529 U.S. 473, 484 (2000) (petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."). Any doubt as to whether a petitioner has met the standard is resolved in his favor. Lambright, 220 F.3d at 1025. The Court must "state why a certificate should not issue." Fed. R. App. P. 22(b)(1) (emphasis added).

### B. Discussion

As set forth above, White does not make a showing that he was deprived of a federal constitutional right in his trial. On their faces, his claims indicate that there were some conflicts in the testimony at trial. The jury resolved those conflicts. White does not seek a new trial because his first trial was marred by constitutional error but only in the hope of obtaining a different result. A COA should be denied.

Based on the foregoing, the Court enters the following:

## **RECOMMENDATION**

1. The Petition (doc. 1) should be DENIED on the merits.

2. The Clerk of Court should be directed to enter, by separate document, a judgment in favor of Respondents and against White.

3. A certificate of appealability should be DENIED.

### **NOTICE OF RIGHT TO OBJECT TO FINDINGS & RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT**

Pursuant to 28 U.S.C. § 636(b)(1), Petitioner may serve and file written objections to this Findings and Recommendations within ten (10) business days of the date entered as indicated on the Notice of Electronic Filing. A district judge will make a de novo determination of those portions of the Findings and Recommendations to which objection is made. The district judge may accept, reject, or modify, in whole or in part, the Findings and Recommendations. Failure to timely file written objections may bar a de novo determination by the district judge.

<u>Petitioner must immediately notify the Court of any change in his mailing address by filing a "Notice of Change of Address."</u> Failure to do so may result in dismissal of this action without notice to him.

DATED this 30th day of September, 2008.

/s/ Carolyn S. Ostby
Carolyn S. Ostby
United States Magistrate Judge